## A. N. McKAY v. J. K. HAMBLIN.

1. SALE OF PERSONAL PROPERTY.—A contract respecting personal property amounts to an absolute sale, where the price is fixed, and the purchase-money paid, and the property sold placed under the power of the purchaser and out of the actual possession of the vendor; though, by the terms of the contract, the vendor is bound to overlook the property and transport the same to a specified place.

2. PERSONAL PROPERTY: CONTRACT FOR SAFE-KEEPING NEVER INFERRED.—A contract for the safe-keeping of personal property will never be inferred, but must be founded on positive contract, or on a very clear manifestation of such intent, as gathered from the terms and circumstances of the contract.

3. BAILMENT: RESPONSIBILITY OF NAKED DEPOSITARY.—Where there is no contract for the safe-keeping of property, and no compensation agreed to be paid for the custody of the same, the party in possession is a mere naked depositary, and in the event of loss, is liable only for gross neglect.

4. BAILMENT: LIABILITY OF BAILEE, WHERE GOODS DEPOSITED WITH CONSENT OF OWNER AT A SPECIFIED PLACE.—Where goods are left in charge of a bailee, and by the consent or direction of the bailor deposited at a certain place and lost, without any neglect on the part of the bailee, the bailor assumes the hazard, and cannot complain.

APPEAL from Special Court of Equity at Jackson.   Hon. George T. Swann, judge.

*A. P. Hill,* for appellant, contended,

That the contract is executory; no cotton was seen or sold; it is a mere executory contract by Hamblin for the future delivery of nine bales of cotton; hence, no title passed.

The rule in such cases is, that the absolute risk is with the

vendor. This absolute liability under the general law is modified by the proviso in the contract, that appellee was not to be liable for " unavoidable accidents." He is then liable for everything else except unavoidable accidents.

The stealing of the cotton was not an accident unavoidable by human prudence. The exercise of the proper care and caution would have prevented it.

*Potter*, for appellees, contended,

That the contract declares a sale, acknowledges payment of the price, specifies the number of bales, and states the weights. If the writing contained nothing more, there could be no doubt that the property passed, although there was no manual delivery. But delivery is not essential to pass title; the right of possession may remain with the vendor, whilst the property in the thing is in the vendee. 1 Parsons' Cont. 440, 441.

The provision for future delivery does not affect the question of property. The general rule is, that the property passes, where the vendor has done everything necessary to be done on his part. 2 Kent's Com. 670 (492) ; Story on Sales, section 296 ; 6 East, 614.

If the assumption is adopted that appellee was bound for the safe-keeping of this cotton, for how long was he to be so responsible? The contract binds him to deliver at Canton upon request; it fixes no time, in so many words, within which request was to be made. When a contract is thus indefinite as to time, the law supplies the omission, and prescribes the act to be done within a reasonable time. 1 Parsons' Cont. 444 ; 2 Greenleaf's R. 253.

As to what is reasonable time, see 1 Hawks. R. 41 ; 2 Parsons' Cont. 173, and note (*j*).

From the date of the contract until demand was made was more than a year and seven months. This was an unreasonable delay, and appellant must bear the consequences of his neglect. 1 Parsons' Cont. 446 ; *Williard* v. *Perkins*, 1 Busbee Law R. 253 ; *Smith* v. *Sherwood*, 2 Texas, 460.

HANDY, C. J., delivered the opinion of the court.

This was a bill filed by the appellant in the Special Court of

Equity at Jackson, for the specific performance of a contract made by the appellee for the sale and delivery of nine bales of cotton.

The contract is in writing, and in the following words:

" Camden, Miss., October 16, 1863.  Received of A. N. McKay, nine hundred dollars, being pay in full for nine bales of cotton, weighing 500 pounds per bale, 4,500 pounds in all, which I have this day sold said McKay, at 20 cents per pound.  Said cotton I agree to deliver at Canton, in good order, when required to do so; but it is understood that I am not to be held responsible for unavoidable accidents.  Cotton located fifteen miles north of Canton.          J. K. HAMBLIN."

It appears by the pleadings and proofs, that this contract was executed at Camden, a village in the northern part of Madison county, and that, at the time of the sale, the cotton was ginned and baled, and was located on a plantation called the Lloyd Place, which fact was known to the appellant, and that the appellee did not reside on that place, but resided at the time two and a half miles from the Lloyd Place, which was then occupied by another person; that the cotton was in the gin-house on the Lloyd Place, two or three hundred yards from the dwelling-house, and, about the time of the surrender of the Confederate forces, that it was stolen by some lawless persons, then common in the region of country, and was lost.  It further appears, that the appellant had several agents in the neighborhood for the purchase of cotton; that one of these, Maxwell, called on the appellee for the delivery of the cotton, after the surrender, and he replied that he had secured four bales by hauling it to his house from the Lloyd Place, and that he was willing to deliver this, provided the contract would be delivered up; that Maxwell supposed, from the conversation, that these four bales were part of the cotton sold to the appellant.  But it appears that these four bales belonged to the appellee's sister, who resided at the Lloyd Place, and were removed thence by the appellee through mistake of his wagoner, the appellee having sent to

remove the cotton belonging to appellant; that he intended to return said four bales to the place, but was prevented from doing so by his wagon and teams being taken from him by the United States forces shortly after the removal; that he then determined to use this cotton by way of compromising with the appellant, and in order to prevent a lawsuit, and to account to his sister for the cotton; this was done, not because he felt under an obligation to account to the appellant for the cotton, but to avoid litigation.

It appears that there was other cotton belonging to persons who had purchased it, to a considerable amount, in the gin-house at the Lloyd Place, for safe-keeping, and that the plantation was a retired place, and that this other cotton was also stolen about the same time that the cotton of the appellant was stolen.

In order to determine the rights of the parties under the facts of the case, let us consider, first, the import of the contract sought to be enforced.

It is plainly an absolute sale of the nine bales of cotton to the appellant. All that was necessary to render the transaction a complete sale was done—the payment of the purchase-money and the placing of the cotton under the power of the purchaser, and out of the actual possession of the vendor. It was ginned, and baled, and left at a place of deposit by the consent of the purchaser, and nothing was wanting to render the title of the purchaser perfect.

But the vendor agreed to " deliver the cotton at Canton, in good order, when required to do so; " and what was the extent of this obligation, under the circumstances? It is evident that the intention was, that he should *transport* the cotton to Canton, when required by the purchaser; for it was not in his actual possession, but in a place of deposit where the purchaser wished it to be; and there is no expression used, holding the idea that the vendor was to be charged with the duty of *keeping the cotton safely.* It was already " delivered" to the purchaser, and all that he appears to have desired further was that it should be hauled to the place of shipment when he

required it.  This stipulation, interpreted by the accompanying circumstances, cannot be held to be a contract for safe-keeping; for such a contract will never be inferred, but must always be founded on positive words, or on a very clear manifestation of such an intent.  There being no contract for safe-keeping, and there appearing to be no compensation paid for his keeping it, the position of the vendor, therefore, is at most that of a naked depositary; and that would be the case even if the cotton be regarded as left in his possession or keeping.  In such a case, all that the law requires of the party is good faith, and that diligence that a prudent man would use in taking care of his own property.  Edwards on Bailments, 69, 70; 2 Kent's Com. 564.  If the depositary keeps the goods gratuitously, and without a special agreement to keep them safely, or to take good care of them, he is not responsible for their loss, unless it be by reason of gross neglect (Ib.)  And it is settled law that, in such a case, he would not be liable if the goods were stolen, where he was not chargeable with gross neglect.  Story on Bail, section 72.

Again, if the owner agree that the goods may be kept in a particular place, and they are lost there, without gross negligence or fraud on the part of the depositary, the owner takes the hazard and cannot complain.  Story on Bail, section 74. In this case it appears that the cotton was left in the gin-house on the Lloyd Place, by the consent of the appellant; and there is no pretence that the appellee was guilty of any gross neglect or fraud which led to the loss of it.  On the contrary, the cotton of another purchaser, to a large amount, had been placed there for safety, and that was stolen likewise.  The appellee, therefore, did only what others did, who must be presumed to have been watchful of their interests, in leaving the cotton at that place; and being under no obligation to remove it, except to Canton when required, and having done all that an ordinarily prudent man would do in taking care of his own property, he is not responsible for the loss by theft, even if he were chargeable with the duty of keeping the cotton.

Upon any view that can properly be taken of the case, we

think that the appellee was not liable, and that the decree dismissing the bill was correct.

Let the decree be affirmed.